### BECK v. REYNOLDS METALS CO.
### No. 9283.

Circuit Court of Appeals, Seventh Circuit.
Oct. 28, 1947.

Abraham Redman, Arthur W. Sprague, and Sprague & Redman, all of Chicago, Ill., for appellant.

Leo F. Tierney and Louis A. Kohn, both of Chicago, Ill., Fred R. Edney and Clay A. Copeland, both of Louisville, Ky., and Durmont W. McGraw, of Chicago, Ill. (Mayer, Meyer, Austrian & Platt, of Chicago, Ill., of counsel), for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff sued the defendant company for sales commissions allegedly due him on orders secured by him while he was employed by the defendant's vendor. In the eighth paragraph of the defendant's answer, the right of the plaintiff to sue on the contract which the defendant, as vendee, had entered into with the plaintiff's former employer, as vendor, was challenged on the basis that the contract was not for the plaintiff's benefit. The defendant's motion for judgment on the pleadings was sustained by the District Court. From this judgment the plaintiff has appealed.

The plaintiff had been employed by the Aluminum Products Company, hereinafter called the vendor, to sell, supervise, and arrange for the sale of stainless steel utensils manufactured by the vendor. The ven-

dor had agreed to pay the plaintiff for such services a commission on the sale of the utensils when they were shipped. The vendor sold its assets to the defendant by a written agreement. At the time of the sale the vendor had unfilled orders for stainless steel utensils taken by the plaintiff and under his supervision. After it had acquired the vendor's business, the defendant filled these orders pursuant to the contract of sale, wherein it was provided that in consideration of the vendor's agreement to sell, the defendant was to manufacture "such stainless steel utensils as may be necessary to fill all orders now held by Vendor." The contract further provided for the continued manufacture of said products and the terms of sale thereof. The contract then recited:

"It is the intention of the parties that Reynolds shall assume and does hereby assume all responsibilities of Vendor with respect to unfilled orders, but that as to dates of delivery is bound only to the reasonable capacity of that part of the equipment in Plant II (Lemont) now devoted to the production of stainless steel cooking ware and that its responsibilities in such connection are subject to customary hazards of labor, material supplies, Acts of God, and other causes beyond its control."

It will be observed that this clause did not provide that the defendant would *fill the unfilled orders,* but that it assumed all responsibilities of the vendor "*with respect to unfilled orders.*" The limitations that the defendant put upon its responsibilities assumed in the provision above quoted were of plant capacity and certain enumerated hazards, all of which referred only to the dates of delivery.

The defendant having filled these orders, the plaintiff sued the defendant for his commission in obtaining these orders for the vendor, relying upon the defendant's assumption, as above set forth. The defendant's answer, which was sustained by the court, was as follows:

"8. The contract of December 7, 1945, described in paragraph 3 of the complaint, did not have as its primary object and purpose either the direct or indirect benefit

of the plaintiff, and therefore the plaintiff, as a stranger thereto, cannot sue thereon."

The sole question for our determination is whether the plaintiff had a right to sue the defendant under this contract. The plaintiff is not a formal party to the contract, nor is he mentioned anywhere therein. One does not have to be a formal party to a contract nor be mentioned therein to have a right to sue thereon, nor does the promise have to be for the sole benefit of the third party who attempts to sue, if it is the intention of the formal parties to the contract to make it for his direct or substantial benefit. Carson Pirie Scott & Co. v. W. J. Parrett et al., 346 Ill. 252, 178 N.E. 498, 81 A.L.R. 1262; Fleming et al. v. Dillon et al., 370 Ill. 325, 333, 18 N.E.2d 910, 914, 120 A.L.R. 1218.

We do not understand the defendant to dispute this proposition of law. Its position is that that is not this case. We are unable to agree with the defendant in this contention. The contract is clear and unambiguous. Whatever the responsibilities of the vendor were "with respect to unfilled orders," that is what the defendant assumed—the totality of vendor's responsibilities, limited only as to delivery dates by plant capacity and certain hazards beyond the defendant's control. That one of the "responsibilities of Vendor with respect to unfilled orders" was to pay the plaintiff who had taken or supervised the taking of the orders seems clear. That responsibility the defendant unconditionally assumed. When it did so, it did something directly and substantially for the plaintiff's benefit, and the plaintiff was entitled to sue the defendant on that contract of assumption.

This being so, it was error for the court to sustain the eighth paragraph of the answer and to give judgment for the defendant.

The defendant has relied heavily upon our opinions in Vilter Mfg. Co. v. Loring et al., 7 Cir., 136 F.2d 466, and Sachs et al. v. Ohio Nat. Life Ins. Co., 7 Cir., 148 F.2d 128, 131, 132, 158 A.L.R. 688. In the Vilter case the contract was one of guaranty. The defendants in that case did not promise

to assume the liability or responsibility of the Vilter company to its obligees. On their guaranty, they agreed only to lend the company or cause to be lent certain money. Obviously, that contract was not made for the benefit of the company's creditors. It was made for the company's benefit.

The Sachs case does not remotely support the defendant's position in the case before us. In the Sachs case, one insurance company had reinsured the insurance contracts of another. In the original insurer's assets were shares of stock in a bank that had failed. The depositors of the bank sought to hold the reinsurer for the stockholder's liability on the bank stock held by the insurer. We held the promise of the reinsurer related only to insurance contracts, and its obligation was not undertaken for the benefit of the bank depositors.

For the error of the District Court as above indicated, the judgment is reversed and the cause remanded with directions to proceed in accordance with this opinion.